IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KARIN HAZEL,<br><br>    Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | Case No. 2:16-cv-1096<br><br>Judge Graham<br><br>Magistrate Judge Kemp |

**OPINION & ORDER**

  This matter is before the Court on pro se Plaintiff Karin Hazel's "Motion for Emergency Restraining Order." (Doc. 2). The Court construes this as a motion for a temporary restraining order governed by Rule 65. *See* Fed. R. Civ. P. 65. The Court will deny Hazel's motion.

**I. Background**

  Plaintiff Karin Hazel, proceeding pro se, filed her Complaint and Motion against Wells Fargo Bank, N.A. ("Wells Fargo"), requesting the Court enjoin a foreclosure sale of her residence scheduled to occur on December 2, 2016. Wells Fargo responded with a memorandum contra Hazel's motion for a TRO, (Doc. 9), as well as a motion to dismiss, (Doc. 8). The Court held a telephone conference on November 30, 2016 and shortly thereafter Hazel filed a memoranda in reply to Wells Fargo's response. (Doc. 12). That same motion includes a request for "extension of time to reply to defendant's motion to dismiss." (Pl.'s Mem. in Resp. to Def.'s Opp. of Pl.'s Mot. for Restraining / Mot. for Extension of Time to Reply to Def's Mot. to Dismiss. (hereinafter, "Pl.'s Mem.") at 1, Doc. 12). The motion for a TRO is ripe for decision.

  Here's the relevant factual history. Hazel alleges that she purchased a home through a loan secured by a mortgage on the property. (Compl. at 2, Doc. 5). Hazel failed to pay on that mortgage, and on July 6, 2010, Wells Fargo filed a foreclosure complaint. (*Id.*). Hazel alleges that Wells Fargo failed to comply with certain regulations of federally insured mortgages, specif-

1

ically, regulations from the U.S. Department of Housing and Urban Development ("HUD") that (1) the mortgagee provide to the mortgagor a notice of default and acceleration, 24 C.F.R. § 201.50(b), and that (2) in most cases, a mortgagee attempt to meet face-to-face with a delinquent mortgagor before filing a foreclosure complaint, 24 C.F.R. § 203.604.

But Hazel didn't make these arguments in the state-court foreclosure action. Here's the procedural history of the foreclosure action. The trial court granted summary judgment to Wells Fargo and ordered a foreclosure sale. (Def.'s Ex. C to Mot. to Dismiss, Doc. 8-3). Hazel then filed a "Motion to Vacate Judgment and/or Relief from Judgment Pursuant to Civ. R 60," arguing that she had meritorious arguments that she did not have the opportunity to present to the trial court. (Def.'s Ex. D-1, Doc. 8-4). A Magistrate entered a Decision and Entry granting Hazel's motion to set aside the judgment against her. (Def.'s Ex. E-1, Doc. 8-6). Wells Fargo objected to the Magistrate's decision, but the state-court Judge adopted the Magistrate's report, overruling Wells Fargo's objections. (Def.'s Ex. E-2 at 3, Doc. 8-7). The Ohio Tenth District Court of Appeals reversed the judgment adopting the Magistrate's decision and remanded the case to the trial court. (Def.'s Ex. F at 2, Doc. 8-8). On remand, the Tenth District directed the trial court to consider whether Hazel complied with Ohio Civil Rule 9(C), (*Id.*), which says, "(C) Conditions precedent[:] In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity," Ohio Civ. R. 9(C).

On remand, the trial court held that Hazel "did not specifically controvert the plaintiff's claim that it had complied with all the conditions precedent to foreclosure." (Def.'s Ex. F at 4). Specifically, Wells Fargo, in its foreclosure complaint, alleged that it did comply with all the conditions precedent to foreclosure, but Hazel, in her Answer, only asserted a general denial. Therefore, the trial court held, "[s]ince Hazel's answer was insufficient to put the plaintiff's compliance with the HUD regulations at issue in the case, the Court finds that she has not established that she has a meritorious defense to present if relief is granted." (*Id.* at 5). The trial court denied Hazel's motion for relief from judgment. (*Id.*). Hazel appealed that decision, but the Tenth District affirmed the decision of the trial court, *Wells Fargo Bank, N.A. v. Hazel*, 2016-Ohio-305, ¶ 9 (10th Dist., January 28, 2016), and the Ohio Supreme Court declined jurisdiction, *Wells Fargo Bank, N.A. v. Hazel*, 146 Ohio St. 3d 1415, 2016-Ohio-3390, 51 N.E.3d 660 (table decision).

Then, Hazel filed this action in federal court. Hazel asserts three causes of action in her complaint: (I) breach of contract, (II) preliminary and permanent injunction, and (III) injunctive relief. (Compl. at 8–12). In Count I, Hazel alleges that Wells Fargo and Hazel "agreed, as a term of the Mortgage, that Wells Fargo would comply with all applicable HUD mortgage servicing regulations before initiating any foreclosure proceedings or taking any other action against Plaintiff. Therefore, Defendant Wells Fargo has materially breached its agreement with Plaintiff Hazel." (*Id.* at 9). In Counts II and III, Hazel seeks an injunction preventing the foreclosure sale of her home, arguing that Wells Fargo has no legal right to do so. (*Id.* at 9–12).

## II.     Legal Standard

The Court considers four factors to determine whether to issue a TRO: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a [TRO], (3) whether granting the [TRO] would cause substantial harm to others, and (4) whether the public interest would be served by granting the [TRO]." *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (considering the same factors used to determine whether court should stay a TRO). "Although these four factors guide the discretion of the district court, they do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). The first factor—the likelihood of success on the merits—is the most important factor to the Court's analysis. *See Jones v. Caruso*, 569 F.3d 258, 277 (6th Cir. 2009) (preliminary injunction analysis).

## III.    Discussion

### A.  Hazel does not have a strong likelihood of success on the merits

Hazel asserts that the Court should issue a TRO because Wells Fargo violated HUD regulations and thus had no right to initiate the foreclosure complaint. (Compl. at 2). But through two appeals, Ohio state courts have rejected Hazel's arguments. Wells Fargo argues that Hazel is not likely to succeed on the merits of her claim because of these state-court judgments, and notwithstanding those judgments, her claim fails on the merits. The Court need not discuss the merits of Hazel's claims because the *Rooker-Feldman* doctrine and res judicata are likely dispositive of those claims.

The *Rooker-Feldman* doctrine likely prohibits the Court from entertaining Counts II and III. "[T]he *Rooker–Feldman* doctrine . . . prevents federal courts from exercising jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Alexander v. Rosen*, 804 F.3d 1203, 1206 (6th Cir. 2015) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Counts II and III seek to stay the foreclosure sale ordered by the state court. This invites the federal court to review and reject that state court judgment, an action the *Rooker-Feldman* doctrine prohibits. Therefore, since the Court likely lacks subject-matter jurisdiction over Counts II and III, Hazel does not have a strong likelihood of success on the merits of these claims.

Count I does not directly attack the judgment of the Ohio court, but in it Hazel asserts that Wells Fargo breached the mortgage by filing the foreclosure action without first complying with applicable HUD regulations. Wells Fargo argues that this claim was a compulsory counterclaim in the state-court action; therefore, "Hazel's failure to assert the claim in the State Court Action prevents her from attempting to get another bite at the same apple now." (Def.'s Mot. to Dismiss at 10). This argument stems from the doctrine of res judicata.

"Under Ohio law, the doctrine of res judicata consists of 'the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel.'" *Doe ex rel. Doe v. Jackson Local Sch. Sch. Dist.*, 422 F. App'x 497, 500 (6th Cir. 2011) (quoting *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 862 N.E.2d 803, 806 (2007)). "Claim preclusion has four elements: '(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Id.* at 501 (quoting *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (applying Ohio law)).

Here, all the elements of claim preclusion are met. First, there is a prior final, valid decision on the merits by a court of competent jurisdiction; the Ohio trial court's judgment in favor of Wells Fargo was ultimately affirmed by the Tenth District Court of Appeals. Second, this action is a second action involving the same parties as the first. Third, this second action raises claims that could have been litigated in the first action if Hazel had properly pleaded them in her

answer. It's true that Hazel never made the substantive argument she seeks to make here. But the reason for that is because she failed to include that argument in her response to Wells Fargo's state-court complaint. The Tenth District and the Ohio trial court discussed this issue at length and concluded that Hazel's pleading failure barred her from raising the issue. So here, Hazel raises a claim that could have been litigated in the state-court action. Fourth, this action is a second action arising out of the same transaction or occurrence that was the subject matter of the previous action. The subject matter of this action—the foreclosure on Hazel's home based on the mortgage—arises out of the exact same transaction or occurrence. Count I of Hazel's complaint is likely barred by the doctrine of res judicata.

All of Hazel's claims are likely barred by either the *Rooker-Feldman* doctrine or the doctrine of res judicata. The Court need not discuss the arguments on the merits of these claims. Hazel does not have a strong likelihood of success on the merits. Therefore, this factor weighs in favor of denying the motion for a TRO.

### B. Hazel may suffer irreparable injury absent a TRO

Hazel argues she will suffer irreparable injury if the Court denies the TRO she seeks; Hazel's residence would be sold on December 2, 2016. Wells Fargo argues that irreparable harm only exists where there is no adequate remedy at law, and here, Hazel had an adequate remedy at law in the defense of the foreclosure action. Additionally, Hazel still has the statutory right of redemption. *See* Ohio Rev. Code § 2329.33.

While it is true that "[t]he availability of adequate state court remedies is a critical factor in determining whether extraordinary injunctive relief should issue from the federal court," *Lamb Enters., Inc. v. Kiroff*, 549 F.2d 1052, 1058 (6th Cir. 1977), besides the right to redemption, Wells Fargo only points to adequate remedies at law that have come and gone. Hazel did have the opportunity to appeal the Ohio trial court's judgment, and she did have the opportunity to present her arguments to the trial court, and she did have the opportunity, which she missed, to plead as a counterclaim that Wells Fargo failed to follow HUD regulations. So, Hazel did *have* an adequate remedy at law, but now her options are quite limited. This, however, is not enough to weigh strongly in Hazel's favor as she does still have the statutory right of redemption. *See* Ohio Rev. Code § 2329.33. On the other hand, the sale of Hazel's residence, the likely outcome given Hazel's now limited avenues for legal relief, would be an irreparable injury.

This factor does not weigh strongly either for or against issuing a TRO.

### C. Issuing the TRO would cause some harm to others

Hazel asserts that issuing the TRO would not harm Wells Fargo because it "has no legal standing to institute or maintain a foreclosure of the Property." (Mot. for TRO at ¶ 16). In any event, Hazel asserts that any harm to Wells Fargo is substantially outweighed by the irreparable harm she would suffer if the TRO were not granted. (*Id.*).

But granting the TRO would cause some harm to Wells Fargo. It has a valid judgment to foreclose on the property. Furthermore, Wells Fargo argues it will continue to be harmed if the Court issues a TRO enjoining the foreclosure sale because it would be denied its right to enforce a valid judgment, to collect money from the sale of the property, and no longer continue incurring expenses such as taxes and insurance payments. Granting the TRO would prolong an already protracted foreclosure process, one that appears to be meritorious, even in the face of the harm faced by Hazel.

Hazel provides authority for the proposition that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Baker v. Adams Cty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 930 (6th Cir. 2002) (quoting *Sampson v. Murray*, 415 U.S. 61, 100 (1974)). That may be true, in the context of an analysis of what constitutes irreparable harm. *See Sampson*, 415 U.S. at 100 ("The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.") (quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958). But under this factor, the Court does not look for irreparable harm done to others; the Court looks for any harm that issuing a TRO would cause to others.

This factor weighs in favor of denying the motion for a TRO.

### D. The public interest would not be served by granting the TRO

Hazel argues that issuing the TRO would "enforce[e] the constitutional rights of homeowners." (Pl.'s Reply at 9). Hazel also argues that her case is similar to others in Ohio where Wells Fargo has used "illegal fraudulent practices." (*Id.*). Hazel provides no specific allegations or evidence of widespread illegal or fraudulent practices by Wells Fargo in connection with foreclosures. And while it is always in the public interest to enforce valid statutes, *see Davis v. Johnson*, 26 F. Supp. 3d 665, 682 (E.D. Mich. 2014) (assessing constitutionality of election-law stat-

6

utes), here, granting the TRO would not further any interest underlying the HUD regulations Hazel alleges that Wells Fargo violated.

Conversely, Wells Fargo argues that the public interest would be served by denying the TRO because of the comity and federalism concerns implicated by a federal court enjoining a state-court judgment. This argument is well taken because of the policy concerns that underpin the *Rooker-Feldman* doctrine.

This factor weighs in favor of denying the motion for a TRO.

### IV.     Conclusion

The TRO factors favor denying the motion for a TRO. Most importantly, Hazel has not shown a strong likelihood of success on the merits on any of the three claims she pleads in the complaint. Additionally, none of the other factors weigh strongly in favor of granting the TRO. Therefore, Hazel's Motion for Emergency Restraining Order is **DENIED**. (Doc. 2).

In Hazel's memorandum, (Doc. 12), she moved for an extension of time to file a response to Wells Fargo's motion to dismiss. Hazel cited the foreclosure sale on December 2, 2016 as the basis for the need for an extension. And while the foreclosure sale will proceed, so will Hazel's lawsuit. As such, Hazel still has "twenty-one days after the date of service of the motion" in which to file a memorandum in opposition to Wells Fargo's motion to dismiss, which is still pending before the Court. S.D. Ohio Civ. R. 7.2(a)(2).

IT IS SO ORDERED.

                                                     s/ James L. Graham
                                                     JAMES L. GRAHAM
                                                     United States District Judge

DATE: November 30, 2016